Kevin T. Fitzgerald
ABA No. 8711085
Ingaldson Fitzgerald, P.C.
813 West Third Avenue
Anchorage, Alaska  99501
(907) 258-8750
(907) 258-8751/Facsimile
E-mail: kevin@impc-law.com

Attorneys for Defendant

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. 3:18-cr-00064-TMB-DMS |
| | ) | |
| Plaintiff, | ) | **SENTENCING MEMORANDUM** |
| | ) | |
| v. | ) | |
| | ) | |
| CHRISTOPHER JAMES DEMURE, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

COMES NOW Defendant, Christopher James DeMure, by and through counsel, Ingaldson Fitzgerald, P.C., and hereby provides this Sentencing Memorandum to aid the Court at the Imposition of Sentence currently scheduled for July 30, 2020.

The presentence writer has recommended a sentence of eighteen (18) months.  18 U.S.C. § 3553(a) expressly provides that the court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in the statute.  In considering the 18 U.S.C. § 3553(a) factors, or a possible departure under Section 5H1.3 or Chapter 5, Part K,

**INGALDSON FITZGERALD, P.C.**
Lawyers
813 W. 3rd Avenue
Anchorage, Alaska
99501-2001
(907) 258-8750
FAX: (907) 258-8751

Subpart 2 (Other Grounds for Departure), Mr. DeMure recommends a sentence of no active jail time. If any time is imposed it should be home detention. The reasons follow.

I. PROCEDURAL HISTORY

This matter has a relatively unusual procedural history. On May 23, 2018, a Complaint was filed charging Mr. DeMure with mail fraud, wire fraud, and money laundering. On June 15, 2018, a Felony Information was filed charging Mr. DeMure with mail fraud (Count I), wire fraud (Counts II, III, IV), and money laundering (Counts V, VI). Two criminal forfeiture allegations were also included in the Felony Information. On August 30, 2019, Mr. DeMure appeared before U.S. Magistrate Judge Deborah Smith and, without a plea agreement, pleaded guilty to all counts charged in the Felony Information.

This Court will recall that it had been Mr. DeMure's desire to plead guilty as early as May 2019 when he attempted to do so by representing himself as his own counsel. Mr. DeMure has never denied responsibility for his misconduct.

Mr. DeMure did deny the criminal forfeiture allegations. Subsequently, the parties reached an agreement regarding the items that may be subject to forfeiture, preserving the issue of whether in addition to restitution, certain items should be forfeited. Issues related to forfeiture will be addressed infra.

**INGALDSON FITZGERALD, P.C.**
Lawyers
813 W. 3rd Avenue
Anchorage, Alaska
99501-2001
(907) 258-8750
FAX: (907) 258-8751

While on pretrial supervision, Mr. DeMure has used his time productively, attending the University of Alaska, Anchorage. During his release, he has also addressed his ongoing medical and mental health needs. He has also reported completely and fully as directed. Mr. DeMure has done everything, and more, of what was required and expected of him during the more than two years on release.

## II. 18 U.S.C. § 3553(a)

### A. (1)-(5) Factors.

Mr. DeMure's misconduct is well set out in the charging documents and in the Presentence Report. Again, he has admitted the conduct and accepted responsibility.

Prior to being charged with the instant financial crimes, Mr. DeMure had no contact with the criminal justice system either as a juvenile or as an adult. He has an exemplary record of service to the United States Army as a commissioned officer, serving many deployments and becoming the recipient of various medals and awards for valor, bravery, and service to his country. Mr. DeMure's CV is attached here as Exhibit A. It is remarkable.

Mr. DeMure suffers from Post-Traumatic Stress Disorder and Major Depressive Disorder (delayed onset, dissociative subtype). Both disorders are still present and appear to have onset in 2014, if not earlier. The criminal incidents occurred after Mr. DeMure

**INGALDSON FITZGERALD, P.C.**
Lawyers
813 W. 3rd Avenue
Anchorage, Alaska
99501-2001
(907) 258-8750
FAX: (907) 258-8751

*USA v. DeMure*
No. 3:18-cr-00064-TMB-DMS
Sentencing Memorandum

had been deployed to Iraq and Afghanistan for many extensive and intensive deployments. Dr. Mindy B. Mechanic's forensic evaluation report of Mr. DeMure dated September 24, 2018 has been provided to the Court under seal as Exhibit B. This 38-page report was provided to the government long ago. It is anticipated that Dr. Mechanic will be called to testify at Mr. DeMure's Sentencing to confirm her diagnosis and to answer questions put to her by either the government or the Court. The report makes clear the connection between Mr. DeMure's conduct as charged and his mental health issues. Exhibit B, pp 33-36. These conditions are certainly relevant in considering Mr. DeMure's sentence under Section 5H1.3 or a downward departure pursuant to Chapter 5, Part K, Subpart 2 (Other Grounds for Departure). Similar to many other senior leaders in the military, it is not uncommon to avoid behavioral health treatment due to concern of the impact to one's career.

Also included, as Exhibit C, again under seal, is a letter from Dr. Philip Baker, a licensed clinical psychologist, who was treating Mr. DeMure until relatively recently. The letter, dated November 13, 2018, was written to the U.S. Attorney's Office in support of a pretrial diversion. The pretrial diversion was considered but rejected by the U.S. Attorney's Office. Dr. Baker submitted a later letter, dated July 5, 2019, to the U.S. Army

**INGALDSON FITZGERALD, P.C.**
Lawyers
813 W. 3rd Avenue
Anchorage, Alaska
99501-2001
(907) 258-8750
FAX: (907) 258-8751

providing that Dr. Baker's prior opinions contained in the November 13, 2018 letter had not changed. Dr. Baker retired due to medical reasons and Mr. DeMure began seeing Dr. Susan Bomalaski in early 2020. She may also be available at sentencing to respond to questions about current treatment. Mr. DeMure has remained diligent with regards to his therapy and is committed to regaining mental wellness.

Finally, since approximately July 2018, Mr. DeMure has been seen by psychiatric nurse practitioner Connie Chevalier, at Greatland Clinical Associates. Ms. Chevalier continues to see Mr. DeMure and has provided a letter concerning that treatment, sealed as Exhibit D. That letter has with this filing been provided to the government.

In short, there is no question that Mr. DeMure's misconduct is serious. He has no prior criminal history or history of psychological or behavioral issues before his military service. After his arrest, Mr. DeMure made unsolicited statements to the agents indicating he acknowledged his conduct. He has continued to accept responsibility.

After charges were filed, some of Mr. DeMure's peer and superiors within the Army urged him to seek behavioral health treatment, something they suspected due to his unique combat experience. Please see the attached letters from two of these

**INGALDSON FITZGERALD, P.C.**
Lawyers
813 W. 3rd Avenue
Anchorage,
Alaska
99501-2001
(907) 258-8750
FAX: (907) 258-8751

*USA v. DeMure*
No. 3:18-cr-00064-TMB-DMS
Sentencing Memorandum

officers. See Exhibit E and Exhibit F. Mr. DeMure was diagnosed as having suffered from Major Depressive Disorder and PTSD. Dr. Mechanic explains the connection between Mr. DeMure's misconduct and his mental health issues. She notes that Mr. DeMure's behavior as evidenced by his financial crimes was reckless and self-destructive, the equivalent of a cry for help. Still, Dr. Mechanic is optimistic about Mr. DeMure's prospects for rehabilitation.

Since being charged, Mr. DeMure has been fully committed to getting well and to his treatment. Active incarceration is not the answer.

B.    18 U.S.C. § 3553(a)(6) To Provide Mr. DeMure With Needed Educational Training.

The presentence writer provided appropriately that this provision was not applicable. Mr. DeMure does not need educational training. Still, it should be acknowledged that Mr. DeMure during his release has pursued his education through courses at UAA in order to become a medical professional, specifically to assist with military veterans.

In the summer of 2018, DeMure was urged by his psychologist and others to use his life experiences and commitment to service in order to help those who suffered from behavioral issues. He met with one of the counselors, Dr. Shannon Uffenbeck, at the WWAMI (Washington, Wyoming, Alaska, Montana, and Idaho) Medical

**INGALDSON FITZGERALD, P.C.**
Lawyers
813 W. 3rd Avenue
Anchorage,
Alaska
99501-2001
(907) 258-8750
FAX: (907) 258-8751

*USA v. DeMure*
No. 3:18-cr-00064-TMB-DMS
Sentencing Memorandum

School on the campus of the University of Alaska Anchorage to determine the steps he would need to take to eventually serve as a psychiatrist. Since the fall of 2018, Mr. DeMure has met multiple times with Dr. Uffenbeck and attended classes at the University of Alaska Anchorage. He has completed all but two of the prerequisite courses in order to apply to medical school and maintained a 4.0 throughout his coursework.

DeMure did intend to complete his studies in the summer of 2020 in order to hopefully attend medical school in the fall of 2021. However, he has decided to take a pause in his studies. DeMure has exhausted his savings and retirement accounts in order to pay back restitution. Mr. DeMure plans to gain some form of employment to increase his savings before he completes the remaining two courses and takes the MCAT.

Active incarceration is not the answer.

C. **18 U.S.C. § 3553(a)(7) To Provide Mr. DeMure With Medical Care.**

In addition, DeMure has suffered from severe chronic back pain since 2013, and it was not until after his release that he sought medical treatment. The military has attempted numerous conservative treatments, to include multiple spinal epidurals, physical therapy, acupuncture, and chiropractic manipulation. An updated MRI in April 2020 showed that his Degenerative Disc Disease has progressed significantly. The military referred him

**INGALDSON FITZGERALD, P.C.**
Lawyers
813 W. 3rd Avenue
Anchorage, Alaska
99501-2001
(907) 258-8750
FAX: (907) 258-8751

*USA v. DeMure*
No. 3:18-cr-00064-TMB-DMS
Sentencing Memorandum

to Dr. Miller at Apex Neurosurgery and Dr. Perrin at Coastal Neurosurgery, both in Anchorage, for a surgical consult. Overall, Mr. DeMure has five (5) bulged discs in his lumbar and sacral vertebrae, as well as facet hypertrophy and narrowing of the neural areas. He has extensive nerve damage that can cause loss of bladder function and debilitating pain. It was not until early-June 2020 that his neurosurgeon recommended a spinal fusion of L2-L3.

Following an MRI on June 11, 2020, it was determined that Mr. DeMure has a rotator cuff that is near completely torn. In addition, there is a bone fragment floating in the joint. This will require surgical repair.

None of these surgeries are ailments that could have been repaired earlier. The requirement for surgery of his back and shoulder were not determined until June.

Mr. DeMure is also being treated by the JBER Traumatic Brain Injury (TBI) Clinic due to severe migraines as a result of concussions sustained during combat and in training. He is currently on medication for these migraines and will also undergo occipital nerve block treatment at the TBI clinic. These migraines are severe, debilitating episodes that can also cause loss of balance. Due to a severe episode, he was taken to the emergency room at Ft. Benning, Georgia for a CT scan of his brain

INGALDSON
FITZGERALD,
P.C.
Lawyers
813 W. 3rd Avenue
Anchorage,
Alaska
99501-2001
(907) 258-8750
FAX: (907) 258-
8751

*USA v. DeMure*
No. 3:18-cr-00064-TMB-DMS
Sentencing Memorandum

in early 2016. This was shortly before the submission of one of his fraudulent claims.

    D. <u>To provide the Defendant with other correctional treatment in the most effective manner (18 U.S.C. § 3553(a)(2)(D))</u>.

Were Mr. DeMure to have been charged by the State, he would have been eligible for the Anchorage Veteran's Court. See Exhibit G. There is no equivalent federal court in the District of Alaska. On September 17, 2018, President Trump signed into law the Veterans Treatment Court Improvement Act of 2018. The law requires the U.S. Department of Veterans Affairs to hire fifty additional Veteran Justice Outreach (VJO) specialists and place them at eligible VA medical centers. These VJO specialists were to serve Veteran Treatment Courts or other veteran focused courts.

As recently as February 2020, Jeremiah Newbold, the head of the Anchorage Veteran Justice Outreach, has explored the option of having a Federal Veterans Court program for the District of Alaska. He has communicated with the Federal Public Defender and U.S. Attorney's Office. Mr. Newbold reports that it is not being considered at this time. This is unfortunate as Alaska has the highest number of veterans per capita and such courts have had success elsewhere, both in the state and federal systems.

As noted above, Mr. DeMure's case was initially presented to the U.S. Attorney's Office for pretrial diversion. Though not

**INGALDSON FITZGERALD, P.C.**
Lawyers
813 W. 3rd Avenue
Anchorage, Alaska
99501-2001
(907) 258-8750
FAX: (907) 258-8751

*USA v. DeMure*
No. 3:18-cr-00064-TMB-DMS
Sentencing Memorandum

accepted for pretrial diversion, Mr. DeMure urges here an alternative to incarceration. There is a history of such programs in the federal system. Attached as Exhibit H is a publication from the United States Sentencing Commission discussing the history of alternatives to incarceration as a sentencing option. The publication also discusses the-then-emerging and developing alternative-to-incarceration courts.

More recently, the defense has had contact with the Honorable Judge Paul Warner of the U.S. District Court of Utah. Judge Warner presides over the Federal Veteran's Court for the District of Utah. He has discussed with the Ninth Circuit establishing more veteran's courts and has discussed the same with U.S. Magistrate Judge Deborah Smith. Judge Warner has written an article about the success of his Veteran's Court. See Exhibit I.

Other states do have such courts. A fair amount has been written about these courts. One such article is a Lewis & Clark Law Review article attached hereto for the Court's reference as Exhibit J.

The point of this article and articles like it are that veterans deserve special treatment from a legal system that tends to be adversarial rather than collaborative. The underlying principle of these so-called "veteran courts" is the notion that veterans are trained to overcome the natural human aversion to

**INGALDSON FITZGERALD, P.C.**
Lawyers
813 W. 3rd Avenue
Anchorage, Alaska
99501-2001
(907) 258-8750
FAX: (907) 258-8751

*USA v. DeMure*
No. 3:18-cr-00064-TMB-DMS
Sentencing Memorandum

harming strangers and repeatedly sent overseas to do just that which may have caused the very mental illness resulting in the charges. It is generally accepted that these mental health problems are worse in proportion to the "intensity and frequency of exposure to combat traumas". Mr. DeMure had twelve deployments including five between 2012 and 2015. Mr. DeMure's later deployments also supported a compartmentalized portion of the special operations community. This type of trauma is unique and came at inescapable personal cost that caused a transgression of deeply held moral values and beliefs. A variety of reports have noted that when combat veterans are sent to jail or prison it is nearly certain that, upon their release - their withdrawal and their depression and alienation will have gotten worse not better.

It is important to distinguish these programs and courts from a diversion program. As noted above, whether a combat veteran is subject to a pretrial diversion is left to the sound discretion of the executive. Rather, these courts are post-guilty plea programs that take a variety of different forms depending on the jurisdiction. Generally, after being admitted into the program, a defendant is subject to conditions that may last twelve to twenty-four months, at the conclusion of which the defendant may be subject to dismissal or an alternative to incarceration. The program requirements are typically tailored

**INGALDSON FITZGERALD, P.C.**
Lawyers
813 W. 3rd Avenue
Anchorage,
Alaska
99501-2001
(907) 258-8750
FAX: (907) 258-8751

*USA v. DeMure*
No. 3:18-cr-00064-TMB-DMS
Sentencing Memorandum

to the individual needs of the defendant. These conditions can include, for example, cognitive-behavioral therapy, restorative justice activities, and work or school requirements.

It appears that were Mr. DeMure to have resided in one of the jurisdictions in which a veteran's court was available, he would be a good candidate for such a program. Judge Warner stated the same in his correspondence. What is more, following his arrest nearly more than two years ago, Mr. DeMure has voluntarily engaged in the very type of conditions that would typically be associated with a veteran's court. He has remained consistent and committed to cognitive-behavioral therapy and other forms of treatment, such as Eye Movement and Desensitization and Reprocessing (EMDR). He has attended school with the hope of someday helping others similarly situated. And, he has continued to pay restitution, even tapping into his retirement funds in order to pay it off.

E.    To avoid unwarranted sentencing disparity among defendants (18 U.S.C. § 3553(a)(6)).

The probation officer has not identified a similarly situated defendant to whom to compare sentencing disparity. Neither has DeMure. This is not to say that the crimes DeMure committed are unique. Rather the circumstances surrounding DeMure and his commission of crime is rare, if not, largely unrecognized. The mental health and behavioral issues plaguing

INGALDSON
FITZGERALD,
P.C.
Lawyers
813 W. 3rd Avenue
Anchorage,
Alaska
99501-2001
(907) 258-8750
FAX: (907) 258-8751

*USA v. DeMure*
No. 3:18-cr-00064-TMB-DMS
Sentencing Memorandum

our combat veterans is real, as is the fact that as a nation we are just now coming to grips with how to deal with this scourge. Still, for the reasons articulated, supra, it appears that were Mr. DeMure residing in one of the federal jurisdictions containing a veteran's court that he would be a likely candidate to a federal alternative-to-incarceration court program.

As previously indicated, Mr. DeMure has accepted full, unequivocal, and complete responsibility for his conduct leading to these charges upon his arrest on May 24, 2018. It is important to note that Mr. DeMure attempted on multiple occasions to make restitution payments, as early as the summer of 2018. However, AUSA Hattan informed Mr. DeMure's former counsel that no restitution could be paid until after sentencing.

Mr. DeMure sat with FBI agents Tyler Vose and Richard Fuller for several hours on May 24, 2018 and discussed his actions. He did this without representation of counsel or under the protection of a proffer letter. Mr. DeMure did this because he knew that he had engaged in illegal and unethical conduct, and he was truly apologetic for his actions.

In addition to meeting prior to retaining counsel, Mr. DeMure indicated to the government it would have his unconditional cooperation throughout the duration of the case. In pursuit of that end, Mr. DeMure obtained a proffer letter and was under the

**INGALDSON FITZGERALD, P.C.**
Lawyers
813 W. 3rd Avenue
Anchorage,
Alaska
99501-2001
(907) 258-8750
FAX: (907) 258-8751

impression that he was going to meet with FBI agents Vose and Fuller and AUSA Hattan on July 27, 2018 to provide them any more information sought and answer any questions they may have not asked in the May 24, 2018 meeting. Mr. DeMure's previous counsel was also asked, as a courtesy, to draft a letter detailing events that took place. The debrief was inexplicably cancelled the day before the meeting.

After Mr. DeMure's previous counsel met with FBI agent Vose, it was clear that the government felt Mr. DeMure was not accepting responsibility for all of his conduct. After multiple requests to meet, the government finally met with Mr. DeMure and his previous counsel on October 2, 2018. During the brief meeting, Mr. DeMure was not asked any questions.

The court is familiar with the series of events in May 2019 regarding Mr. DeMure's appearance bond. These series of events were coercive in nature and unwarranted against Mr. DeMure. As a result, his spouse needed to retain counsel, and overall, the persistence in threatening indictment resulted in substantial legal fees.

   F.   To provide restitution to any victims of the offense (18 U.S.C. § 3553(a)(7)).

Mr. DeMure has paid off the restitution he owes to USAA. As noted above, he has done so by tapping into the military equivalent of his 401k plan, which included tax penalties. The

**INGALDSON FITZGERALD, P.C.**
Lawyers
813 W. 3rd Avenue
Anchorage, Alaska
99501-2001
(907) 258-8750
FAX: (907) 258-8751

*USA v. DeMure*
No. 3:18-cr-00064-TMB-DMS
Sentencing Memorandum

impact is significant since the fate of his military pension is unknown. He did so to get the restitution paid sooner. Mr. DeMure has been diligent in paying USAA restitution, despite many obstacles. Mr. DeMure was proactive in getting USAA to accept restitution payments prior to sentencing in the first instance. After considerable effort, USAA agreed. The other victim, AMEX, did not. Still, Mr. DeMure intends on having the $100,000 held by the court distributed to pay off the approximate $88,000 in restitution owed to AMEX.

III. DEPARTURE

Section 5H1.3 provides that mental health conditions may be relevant in determining whether a departure is warranted. The provision provides that if the mental health condition is present to an unusual degree and serves to distinguish Mr. DeMure's case from the typical case, it may be considered a departure either individually or in combination with other offender characteristics. Section 5H1.3 also makes reference to Chapter 5, Part K, Subpart 2 (Other Grounds for Departure). The policy statement accompanying Section 5K2.0 provides that a downward departure may be appropriate if it is based on offender characteristics of a kind, or to a degree, not adequately taken into consideration in determining the sentencing range.

**INGALDSON FITZGERALD, P.C.**
Lawyers
813 W. 3rd Avenue
Anchorage, Alaska
99501-2001
(907) 258-8750
FAX: (907) 258-8751

For the reasons already articulated, Mr. DeMure submits that he is eligible for a departure pursuant to either Section 5H1.3 or Chapter 5, Part K, Subpart 2. Mr. DeMure urges the court to consider Dr. Mechanic's report and testimony in determining Mr. DeMure's eligibility for a departure. DeMure also relies upon Dr. Baker's letter, Ms. Chevalier's letter, and perhaps Dr. Bomalaski's testimony. Finally, Mr. DeMure relies upon military findings which have rated DeMure with a 70% PTSD rating, which is the second-highest percentage used in the ratings, and which the military found was the result of combat service.

## IV. FORFEITURE

The parties have engaged in a fair amount of negotiations concerning forfeiture. The government filed a bill of particulars regarding criminal forfeiture at docket 31. This included a large number of items. This includes jewelry valued at nearly $80,000, miscellaneous electronics at $4,400, clothing, purses, bikes, gift cards, cash in excess of $39,000; and, two vehicles: 2016 Audi A7 and a 2016 Chevrolet Suburban 1500. Most of these items had at least some tangential reference to DeMure's charges. Some did not. Later, the parties entered an agreement whereby 9 items would not be subject to forfeiture. Docket 110. DeMure requests that at least these 9 items be returned to him.

**INGALDSON FITZGERALD, P.C.**
Lawyers
813 W. 3rd Avenue
Anchorage, Alaska
99501-2001
(907) 258-8750
FAX: (907) 258-8751

This forfeiture agreement largely obviates the issue concerning the interplay between forfeiture and restitution, fronted by the defense. While undersigned appreciates that the principles underlying forfeiture and restitution are different, there is authority providing that items forfeited be used for paying restitution. *See* United States v. Congress Lepou, 3:AN-19-00000-01-SLG, DKT 179 and 182. *See also* p. 39 of 40 of the Revised Presentence Report. Undersigned was also involved in the cigarette tax case before Judge Gleason, U.S. v. Butler, et al., 3:13-cr-00080-SLG, wherein forfeited items were, in part, used to pay restitution.

Here, because restitution will be paid dollar for dollar, the items forfeited represent an additional economic penalty against DeMure. Tracing rules allow the government to forfeit items even partially paid for by ill-gotten gains. For instance, as noted by the presentence writer: "It appears the defendant used some of the funds to pay the balance of two vehicles loans." [Emphasis added] Page 1 of the Revised Sentencing Recommendation. Here the value of the items forfeited by the government exceeds $200,000 even when considering the reduced or discounted values assigned by the government's appraiser.

On May 24, 2018, FBI agents served a search warrant to Mr. DeMure's home on Joint Base Elmendorf-Richardson. A number of

**INGALDSON FITZGERALD, P.C.**
Lawyers
813 W. 3rd Avenue
Anchorage, Alaska
99501-2001
(907) 258-8750
FAX: (907) 258-8751

*USA v. DeMure*
No. 3:18-cr-00064-TMB-DMS
Sentencing Memorandum

items were taken that did not have any connection to pending charges, which the government has acknowledged and plans to return following the imposition of sentence. However, two watches (a 1960 and 1961 Omega watch) that belonged to Mr. DeMure's late father came up missing. Mr. DeMure brought this to the attention of his former counsel during his first meeting with former counsel in June 2018, as well as during subsequent meetings with undersigned counsel. Undersigned counsel has brought this to the attention of AUSA Walker, only to be informed the items were not on any inventory list.

## V.   RESTITUTION

As noted above, the restitution amount determined by the presentence writer is $382,690.36. This breaks down to $295,343.82 to USAA and $87,346.54 to AMEX. The restitution to USAA has been paid. It is anticipated that the $87,346.54 owed to AMEX will be paid out of the $100,000 in the court registry for bail. DeMure requests that the remainder of the bond be returned to him. DeMure requests that no fine be ordered.

The presentence writer has recommended a fine amount of $15,000. As noted above, DeMure has paid restitution to USAA by cashing in the military equivalent of his 401K plan, at a significant future disadvantage to he and his wife. Additionally, as noted by the presentence writer, this case involves the

**INGALDSON FITZGERALD, P.C.**
Lawyers
813 W. 3rd Avenue
Anchorage, Alaska
99501-2001
(907) 258-8750
FAX: (907) 258-8751

*USA v. DeMure*
No. 3:18-cr-00064-TMB-DMS
Sentencing Memorandum

forfeiture of items of value which may be applied towards restitution (*See* <u>United States v. Congress Lepou</u>, 3:AN-19-00000-01-SLG, DKT 179 and 182).

It also bears mention that DeMure is paying more in restitution than what he is legally required. In the objections to the draft presentence report DeMure submitted that the amounts actually obtained from USAA and AMEX approximates $375,530.58, not the $382,690.36 provided as restitution. DeMure obtained his figure by adding the amounts of actual disbursements to him by the insurers. Additionally, this amount includes the incident reported in September 2014, which was an exaggerated burglary claim from Washington. DeMure approximates that between $6,000 to $7,000 worth of items were <u>actually</u> stolen and he exaggerated the claim receiving $26,153.79. So, the loss amount actually owed to USAA is $288,184.04 rather than the $295,343.82 included in the PSR.

Further, the general rule is that restitution is limited to counts of conviction. *See* <u>U.S. v. Jackson</u>, 982 F.2d 1279 (9th Cir. Ct. of Appeals 1992). The MVRA, which amended the VWPA in 1996, did not change the general rule that restitution may only be ordered for losses caused by the offense or offenses of conviction. In this respect, neither the exaggerated claim in 2014, which yielded $26,153.79, nor the 2015 claim, which yielded

INGALDSON
FITZGERALD,
P.C.
Lawyers
813 W. 3rd Avenue
Anchorage,
Alaska
99501-2001
(907) 258-8750
FAX: (907) 258-8751

*USA v. DeMure*
No. 3:18-cr-00064-TMB-DMS
Sentencing Memorandum

$17,779.93, are included within the counts of conviction. The defense could object to these amounts being included within the restitution ultimately ordered by the court. However, consistent with his acceptance of responsibility, DeMure has opted not to do so. Indeed, DeMure has paid the restitution amount to USAA.

Finally, as noted above, the forfeiture of items valued in excess of $200,000 works as a significant financial sanction against him for having engaged in misconduct. An additional sanction of $15,000 does not appear warranted under the circumstances.

## VI. CONCLUSION

The guiding principle applicable to federal sentencing is to impose no greater sentence than minimally necessary to achieve the sentencing goals. Here, that means the sentence recommended by the defense should be imposed, including no active jail time.

Dated the 20th day of July, 2020 at Anchorage, Alaska.

INGALDSON FITZGERALD, P.C.
Attorneys for Defendant

s/Kevin T. Fitzgerald____
ABA No. 8711085
813 West Third Avenue
Anchorage, AK 99501
Fax: (907) 258-8751
E-mail: kevin@impc-law.com

//

**INGALDSON FITZGERALD, P.C.**
Lawyers
813 W. 3rd Avenue
Anchorage,
Alaska
99501-2001
(907) 258-8750
FAX: (907) 258-8751

*USA v. DeMure*
No. 3:18-cr-00064-TMB-DMS
Sentencing Memorandum

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on the
20th day of July, 2020,
a copy of the foregoing was
served electronically on:

Jonas M. Walker, AUSA


_s/Kevin T. Fitzgerald___
F:\W\3621.001\Pleading\Sentencing Memorandum 1.doc

**INGALDSON
FITZGERALD,
P.C.**
Lawyers
813 W. 3rd Avenue
Anchorage,
Alaska
99501-2001
(907) 258-8750
FAX: (907) 258-
8751